# In the United States Court of Federal Claims

No. 21-1075

Filed: June 12, 2024

|  |  |
|---|---|
| DEBRA BLACKWELL, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Michael Colin Fallings, Jr.*, Tully Rinckey PLLC, Austin, TX, for plaintiff.

*Ebonie I. Branch*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

The remaining issue in this case is whether plaintiff, Ms. Debra Blackwell, demonstrated that her employer, the United States Department of Homeland Security, Customs and Border Protection (the "Agency" or "CBP"), violated the Equal Pay Act (the "EPA") when it compensated her male colleague, Mr. Jeremy Luczkowski, but not her, for alleged overtime work since September 18, 2018. Before the Court is defendant's motion for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant argues that plaintiff fails to make a facial showing that (1) she performed overtime work; and (2) she performed substantially similar duties as her male colleague. *See* Defendant's Motion for Summary Judgment at 1–2, 15–19, ECF No. 58 [hereinafter Def.'s MSJ]. Defendant argues in the alternative that, even if plaintiff did meet her burden to make a *prima facie* case, defendant successfully has shown that any pay disparity was attributable to a factor other than sex. *Id.* at 20–23. Plaintiff opposes, arguing that she has established a *prima facie* case under the EPA. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 12–30, ECF No. 59 [hereinafter Pl.'s Resp.]. After careful review, the Court finds no genuine dispute of material fact and grants defendant's Motion.

I.      **Background**

    A.      **Ms. Blackwell's and Mr. Luczkowski's Federal Employment**

Ms. Blackwell has served as a federal civilian employee for more than three decades. In 1988, she started working at the U.S. Department of Justice, Immigration and Naturalization Service, and in 2004, moved to its successor agency, the U.S. Department of Homeland Security, Customs and Border Patrol. *See* Attorney Transfer Complaint at 3, ECF No. 17 [hereinafter Compl.]; Def.'s MSJ at 4 (relying on Deposition of Debra Blackwell, ECF No. 58-5). From 2004 until present day, Ms. Blackwell has worked as a Supervisory Program Manager in the Agency's Office of Field Operations in Houston, Texas. Pl.'s Resp. at 6. The position falls within the 340 - Program Management Series, which is classified as a GS-14 pay grade—the second-highest tier in the General Schedule.[1]  *Id.*; *see also* Def.'s MSJ at 4. The position is exempt under the Fair Labor Standards Act and it is *not* covered by the Customs Officer Pay Reform Act ("COPRA"). *See* Def's MSJ at 4.

Ms. Blackwell's direct supervisor is Assistant Director of Field Operations Erik Shoberg, and her second-line supervisor is Director of Field Operations Judson Murdock. *See* Def.'s MSJ at 5. The scope of her position includes, without limitation:

- managing border security programs;
- overseeing other employees;
- interpreting Agency policy;
- communicating with stakeholders; and
- counseling supervisors and staff on immigration and nationality law and admissibility decisions—Ms. Blackwell's area of expertise.

*See* Def.'s MSJ at 4–5; Pl.'s Resp. at 7–8. Ms. Blackwell's position does not require her to wear a uniform, carry a firearm, travel, or maintain medical standards. Def.'s MSJ at 4.

Ms. Blackwell's tour of duty is from 7:30 AM to 4:00 PM local time, Monday through Friday. Pl.'s Resp. at 7. She contends, however, that her role requires "work beyond normal duty hours and on the weekends." *Id.* This overtime work encompasses job functions within the scope of her position, which include fielding phone calls and responding to emails from her supervisors. *Id.* Ms. Blackwell alleges that she has worked "on average ten (10) hours per week outside of her normal duty hours" since March 2006. Compl. at 4.

---

[1]      The General Schedule ("GS") and corresponding pay system "covers the majority of civilian white-collar Federal employees," and "has 15 grades—GS-1 (lowest) to GS-15 (highest). Agencies establish (classify) the grade of each job based on the level of difficulty, responsibility, and qualifications required." *General Schedule*, U.S. OFF. OF PERS. MGMT., https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited June 12, 2024); *see also Position Classification Flysheet for Program Management Series, 0340*, https://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/standards/0300/gs0340.pdf (last visited June 12, 2024).

Mr. Jeremy Luczkowski is a federal civilian employee who has worked in the same office as Ms. Blackwell since 2011.  Def.'s MSJ at 5 (relying on Declaration of Jeremy Luczkowski, ECF No. 58-8 [hereinafter Luczkowski Decl.]); Pl.'s Resp. at 8–9 (relying on Deposition Transcript of Erik Shoberg, ECF No. 59-2).  He is a Border Security Coordinator, a position that falls within 1895 - Customs and Border Protection Series.  The position—like Ms. Blackwell's position—is classified as a GS-14 pay grade.  Def.'s MSJ at 5.  Unlike Ms. Blackwell's position, however, Mr. Luczkowski's position *is* covered by the Customs Officer Pay Reform Act ("COPRA").

Like Ms. Blackwell, Mr. Luczkowski's direct supervisor is Mr. Shoberg.  *Id.*; Pl.'s Resp. at 8–9.  Unlike Ms. Blackwell, his scope of work primarily concerns law enforcement duties including:

- coordinating more than thirty-nine enforcement programs;
- supervising a four-person team;
- overseeing eighteen officers in various task forces, such as the Joint-Terrorism Task Force and High Incident Drug Trafficking Area Task Force; and
- counseling for the Federal Emergency Management Agency's ("FEMA") Incident Command System, National Incident Management System, and Continuity Operations in his area of expertise.

Def.'s MSJ at 6.  His knowledge of FEMA's systems and operations results in "frequent deployments to national and international operations away from the Houston Field Office."  *Id.*  Mr. Luczkowski's position requires him to wear a uniform, carry a firearm, travel, and maintain medical standards.  *Id.* at 5.

Mr. Luczkowski's tour of duty—like Ms. Blackwell's—is from 7:30 AM to 4:00 PM local time, Monday through Friday.  Pl.'s Resp. at 8–9.  Mr. Luczkowski works overtime to support various operations related to his expertise in emergency management response.  Def.'s MSJ at 7; Pl.'s Resp. at 9.  These operations have included, for example:

> deploy[ment] to CBP's Baltimore Field Office to support Hurricane Florence operations as the Operations Section Chief, which required him to work early morning to late in the evening monitoring hurricane response activities and coordinating personnel.  He also served as the Logistics Section Chief during Operation Secure Line in San Diego, California for five weeks, which required him to work early morning to late night shifts with no days off.  Similarly, in 2019, Mr. Luczkowski was deployed to Eagle Pass and Del Rio, Texas to mitigate a border crisis; managed the immediate movement of all incident management equipment at George Bush Intercontinental Airport; and supported a law enforcement outreach event in Kingwood, Texas following significant flooding events.

Def.'s MSJ at 7–8 (internal citations omitted).  Mr. Luczkowski recorded and earned COPRA overtime compensation for these duties.  *Id.* at 7; *see* Jeremy Luczkowski Overtime Spreadsheet, ECF No. 58-10.

Despite the substantial differences in job duties, Ms. Blackwell and Mr. Luczkowski work in the same office under the same supervisor, they both support the same mission, support the same projects, and cover similar subject matter. For example, both performed work related to Hurricane Harvey relief and supported the Agency's Border Security Division annual Director of Field Operations Conference, but this covers the extent of their job similarities. *See* Def.'s MSJ at 6; Pl.'s Resp. at 9.

### B.     Ms. Blackwell's Grievance and Alleged Overtime Work

In 2019, Ms. Blackwell's direct supervisor, Mr. Shoberg, took a brief absence and she stepped into his shoes as acting Assistant Director of Field Operations. *See* Def.'s MSJ at 7. In this role, she was "asked to review overtime cap waiver requests, as CBP employees who are considered 'customs offers' under COPRA must receive supervisory approval to earn more than the annual statutory cap of overtime compensation." *Id.* During the review, Ms. Blackwell learned that Mr. Luczkowski earned around $45,000 in overtime compensation under COPRA in 2019 for emergency management response duties. *Id.*

On September 13, 2019, Ms. Blackwell filed an informal Administrative Grievance seeking compensation for ten hours of overtime work per week for the last several years. *See* Compl. at 5. On March 17, 2020, Mr. Shoberg responded to her grievance, recognizing some of her off-duty work but ultimately denying her request for overtime compensation because (1) she had not been ordered nor approved to perform the weekly overtime work; (2) her duties differed substantially from Mr. Luczkowski's; and (3) she had not provided documentation supporting her claim. *See* March 2020 Administrative Grievance Denial, ECF No. 58-11. Mr. Shoberg explained that he "perform[ed] a preliminary review of the phone records and couldn't find any notable information that would justify [Ms. Blackwell's] request for 10 hours per week of overtime," but encouraged her to search for and submit records corroborating her request. *Id.* at 2. Following this denial, Ms. Blackwell filed a formal grievance on March 26, 2020, *see* Debra Blackwell Formal Grievance, ECF No. 58-12, which the Agency denied on April 9, 2020, *see* April 2020 Grievance Decision, ECF No. 58-13.

Ms. Blackwell attempted to obtain documentation to support her claim of overtime work.[2] During discovery, she "performed a query of the [A]gency's archived records for 2018. The query produced 33,0772, hits. In 2018, [p]laintiff received 26,377 emails with a Houston Field Office (HFO) passenger count of 12,095,967. In 2019, [p]laintiff received 38,086 emails with a HFO passenger count of 12,844,390." Pl.'s Resp. at 10. In another effort to see if Ms. Blackwell was due overtime compensation, a "desk audit" was performed of her position to determine whether her duties fell within the 1895 - Customs and Border Protection Series, which would make her COPRA-eligible.[3] Def.'s MSJ at 10. The audit revealed that Ms. Blackwell

---

[2]     At the time she filed her informal grievance, plaintiff claimed that she tried to obtain laptop records and other documents from the Agency's Office of Information and Technology but was denied access. It was not until after the commencement of this civil action that the Agency provided plaintiff access to documentation in its systems. *See* Pl.'s Resp. at 10.

[3]     The parties dispute who requested the desk audit. Defendant claims that plaintiff requested the audit, Def.'s MSJ at 9, but plaintiff claims that the Agency "on its own accord requested the desk audit," Pl.'s Resp. at 11. The Court finds immaterial who requested the desk audit in this case to determine the instant issue.

should remain at grade GS-14, but that her position should be reclassified from 340 - Program Management Series to 1801 - Supervisory Immigration Advisor Series because she worked primarily on matters involving individuals entering and leaving the United States. *Id.* The audit further stated that "Ms. Blackwell only performs duties connected to immigration and does not meet the 1895[ - Customs and Border Protection] series." *Id.*

### C.    Procedural History

On September 18, 2020, plaintiff filed a complaint at the U.S. District Court for the Southern District of Texas. *See generally* Complaint, ECF No. 1. On March 18, 2021, the case was transferred to this Court with both parties' consent for proper subject-matter jurisdiction. *See* Defendant's First Motion to Dismiss, ECF No 6; Plaintiff's Unopposed Motion to Transfer, ECF No. 8; Order granting Motion to Transfer, ECF No. 11; Transfer Notice, ECF Nos. 13–14.

Plaintiff seeks compensation "for loss of promotional potential, reputation, lost wages, [and] lost job benefits she would have received," pursuant to the EPA and COPRA. Compl. at 11. On July 13, 2021, defendant moved for partial dismissal of plaintiff's claims under RCFC 12(b)(1) and 12(b)(6) and to strike plaintiff's claim under RCFC 12(f)(2). *See* Defendant's Partial Motion to Dismiss, ECF No. 23. On August 3, 2021, plaintiff responded to defendant's Motion. *See* Plaintiff's Response to Defendant's Partial Motion to Dismiss, ECF No. 16. On August 10, 2021, defendant replied. *See* Defendant's Reply in support of its Partial Motion to Dismiss, ECF No. 27. On January 21, 2022, this Court partially dismissed plaintiff's EPA claim because the EPA's statute of limitations precluded claims accruing before September 18, 2018, and dismissed plaintiff's COPRA claim because the statute does not cover plaintiff's employment position for she is not a "customs officer." *See* Order Granting in Part and Denying in Part Defendant's Partial Motion to Dismiss, ECF No. 28; *Blackwell v. United States*, No. 21-1075, 2022 WL 2315088, at *1 (Fed. Cl. Jan. 21, 2022).

On February 2, 2022, defendant filed an Answer to plaintiff's Complaint. *See generally* Answer, ECF No. 31. On March 31, 2023, the Court stayed this case for the parties to conduct discovery and resolve factual disputes until May 25, 2023. *See* Order Staying Case, ECF No. 54. Then, the parties commenced briefing on the merits. On July 21, 2023, defendant moved for summary judgment. *See* Def.'s MSJ. On August 10, 2023, plaintiff filed her opposition to defendant's Motion. *See* Pl.'s Resp. On September 6, 2023, defendant filed its Reply in support of its Motion. *See* Defendant's Reply in support of its Motion for Summary Judgment, ECF No. 60. On November 2, 2023, the Court held oral argument on the parties' briefing.

## II.    Standard of Review

This Court's jurisdiction is defined by the Tucker Act, which waives sovereign immunity of the United States for claims, not sounding in tort, that are founded upon the Constitution, an Act of Congress, an executive department regulation, or an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). To fall within the Tucker Act's jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part); *see also United States v. Testan*, 424 U.S. 392, 398 (1976). "The Equal Pay Act

constitutes such a money-mandating statute over which this Court has jurisdiction." *See Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008).

In cases in which there is "no genuine dispute as to any material fact," summary judgment is appropriate and "the movant is entitled to judgment as a matter of law." R. Ct. Fed. Cl. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Id.* at 248, 250. In determining the propriety of summary judgment, a court will not make credibility determinations and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. Discussion

### A. Burden of Proof Under the EPA

The EPA prohibits employers from pay discrimination between employees on the basis of sex. 29 U.S.C. § 206(d)(1). Claimants making a *prima facie* EPA case bear the burden to "show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). As succinctly cited in *Martin v. United States*,

> "Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. § 1620.15(a). "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a). "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R. § 1620.16(a).

96 Fed. Cl. 627, 630 (2011).

"Put another way, to carry her burden, plaintiff must identify a male comparator whose work was 'substantially equal,' when focusing on 'the individuals' primary rather than incidental duties.'" *Spellers v. United States*, 157 Fed. Cl. 171, 176 (2021) (quoting *Jordan v. United States*, 122 Fed. Cl. 230, 241 (2015)); *see also Jordan*, 122 Fed. Cl. at 241 ("The 'comparator' selected by the [claimant] must be a particular individual whose work enables a 'factor by factor' comparison and may not be 'a hypothetical or composite member of the opposite sex.'") (quoting *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir.1995)). "It is the job as a whole, not just selected aspects of it that must form the basis of the comparison." *Spellers*, 157 Fed. Cl. at 176 (quoting *Ellison v. United States*, 25 Cl. Ct. 481, 487 (1992)).

If the claimant carries this burden, it becomes the employer's burden to prove—as an affirmative defense—that the pay differential has a permissible, non-sex-based justification. *Moore v. United States*, 66 F.4th 991, 996 (Fed. Cir. 2023).  These non-sex-based justifications include, "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass*, 417 U.S. at 196.

### B.  The Court Grants Defendant's Motion for Summary Judgment.

As discussed in detail below, plaintiff failed to establish a *prima facie* EPA violation because she did not "identify a male comparator whose work was 'substantially equal.'" *Spellers*, 157 Fed. Cl. at 176.  But even if plaintiff sufficiently demonstrated her claim, defendant successfully raised an affirmative defense.

#### 1.  Summary of the Parties' Arguments

Defendant argues that plaintiff's claim fails as a matter of law because "[t]he record conclusively refutes Ms. Blackwell's contention that CBP failed to compensate her but paid overtime compensation to a male colleague for performing 'equal work . . . requiring equal skill, effort, and responsibility' under similar working conditions."  Def.'s MSJ at 14.  Specifically, defendant claims that Mr. Luczkowski's work requires more skill than Ms. Blackwell because his duties require extensive law enforcement training, such as qualifying on a government-issued firearm, and nationwide deployment to perform emergency management response. *Id.* at 15–16.  Defendant further distinguishes Mr. Luczkowski's position because it requires maintenance of high physical standards, work in the field under arduous conditions, and oversight of four people, thirty-nine programs, and at least four special task forces; whereas Ms. Blackwell's position requires sedentary work with no physical demands, work in an office setting, and oversight of three people, twenty-seven programs, and no task forces. *Id.* at 16–20.  Finally, defendant argues that, even if plaintiff could prove that she worked overtime performing similar duties in similar working conditions as her male comparator, "the record establishes that the pay differential was based on a factor other than sex." *Id.* at 14–15, 20–22.

Plaintiff claims that defendant's "contentions are incorrect" because Ms. Blackwell and Mr. Luczkowski perform "substantially equal" work in terms of skill, tasks, effort, responsibility, and conditions.  *See* Pl.'s Resp. at 13.  Specifically, plaintiff argues that her and Mr. Luczkowski's positions require equal skill because each job requires similar experience and education, amount of training, and abilities relating to, for example, knowledge of financial management principles, interpersonal administrative skills, and management skills. *Id.* at 15–16, 25.  Plaintiff also argues that both her level of effort and responsibility are the same, if not greater than Mr. Luczkowski's, because they both perform overtime work in the Houston office and her work requires greater mental exertion, and her responsibilities are at a "high level" and with high-ranking officials. *Id.* at 17–22.  Regarding similar working conditions, plaintiff again alleges that her working conditions are the same as Mr. Luczkowski's because they both primarily work in the Houston Field Office. *Id.* at 23–24.  Finally, plaintiff counters defendant's argument that the pay differential was based on a factor other than sex because "the application

of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance." *Id.* at 28–29.

### 2.     Plaintiff Failed to Establish a *Prima Facie* EPA Violation.

Plaintiff's EPA claim fails because the comparator, though earning a different wage and of opposite sex, does not perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility," nor do plaintiff and the comparator "perform[] under similar working conditions." *See* 29 U.S.C. § 206(d)(1). After comparing both jobs as a whole, the Court finds Mr. Luczkowski an inapt comparator for four reasons.

First, Mr. Luczkowski's job requires different, additional skills that Ms. Blackwell's job does not, namely law enforcement certification and training, firearm qualifications, physical standards, and emergency management response. *Compare* Debra Blackwell Position Description, ECF No. 58-6 [hereinafter Blackwell PD], *with* Jeremy Luczkowski Position Description at 3, ECF No. 58-9 [hereinafter Luczkowski PD]. For example, both employees must know management techniques, policies and principles of the Agency, and communication skills. *Id.* Mr. Luczkowski's position, however, *also* requires advanced knowledge of "Customs and Boarder Protection laws, regulations and precedents," skills to "deal with widely varying and complex or sensitive situations," and "law enforcement methods, including interrogating, searching, seizing, arresting and self-defense for use in the apprehension of terrorist, illegal aliens, or others suspected of illegal activity." Luczkowski PD at 5.

Second, Mr. Luczkowski's job requires a different degree of effort because his primary job duties involve more physical exertion. *Id.* Both Mr. Luczkowski and Ms. Blackwell must exert mental effort to perform their roles. *See* Blackwell PD at 2–5; Luczkowski PD at 3–4. However, Mr. Luczkowski must *also* work in the field, perform eighteen-hour shifts, and routinely work outside his normal tour of duty to assist with emergency situations in regions across the country, whereas Ms. Blackwell's primary duties include her standard tour of duty at a desk in the Houston office. *See* Def.'s MSJ at 16–17 (relying on Deposition of Judson Murdock, ECF No. 58-2 [hereinafter Murdock Dep.]).

Third, Mr. Luczkowski and Ms. Blackwell's level of responsibility differs. Although they both work as supervisors overseeing a few people and several dozen programs, Mr. Luczkowski *also* oversees four special task forces and leads special assignments, such as when he served as "Logistics Section Chief during Operation Secure Line in San Diego, California for five weeks." *Id.* at 18.

Fourth, Mr. Luczkowski performs his primary duties in working conditions different than Ms. Blackwell. Both Mr. Luczkowski and Ms. Blackwell work in a climate-controlled office, but Mr. Luczkowski's work *also* subjects him to working outdoors, in emergency situations, and in adverse conditions with the possibility of physical attacks by dangerous individuals. *Id.* at 19–20 (relying on Desk Audit Evaluation Statement, ECF No. 58-16, and Luczkowski Decl.).

For the foregoing reasons, the Court finds Mr. Luczkowski an inapposite comparator.[4] Plaintiff, therefore, did not meet her burden of establishing a *prima facie* case under the EPA. *See Spellers*, 157 Fed. Cl. at. 175–76.

### 3. In the Alternative, Defendant Sufficiently Raised an Affirmative Defense that a Factor Other than Sex Explains the Pay Differential.

Even assuming plaintiff met her burden, the Court finds that defendant adequately raised an affirmative defense that plaintiff failed to sufficiently rebut. *Id.* at 176. Defendant explained that the alleged pay differential is "based on any other factor other than sex"—that is, differing statutory and regulatory schemes. Def.'s MSJ at 20. Mr. Luczkowski's position is governed by COPRA and Ms. Blackwell's position—whether it be part of the 340 or 1801 Series—is governed by Title 5. *See generally* Order Granting in Part and Denying in Part Defendant's Motion for Partial Dismissal, ECF No. 28 [hereinafter Jan. 21 Order]. COPRA entitles Mr. Luczkowski to overtime compensation for specific work performed as a "customs officer," which he documented and earned. 19 U.S.C. § 267(a)(1); Jan. 21 Order at 7–8. As this Court held, "plaintiff cannot rely on COPRA to support her claim," for her position is not listed in COPRA's implementing regulations. Jan. 21 Order at 6–8 (referencing 19 U.S.C. § 267(e)(1); 19 C.F.R. § 24.16(b)(7)). Because COPRA does not cover plaintiff's claim, the Court looks to Title 5 as the relevant statutory authority. Title 5 permits overtime compensation for "work in excess of 8 hours in a day or . . . 40 hours in an administrative workweek that is—(1) Officially ordered or approved; and (2) Performed by an employee." 5 C.F.R. §550.111(a). As defendant correctly points out, "Ms. Blackwell was *not officially ordered or approved to perform* the amount of overtime work she alleges to have performed." Def.'s MSJ at 22 (emphasis added) (relying on Murdock Dep.).

Despite the lack of official order or approval, the Agency provided Ms. Blackwell with the opportunity to present evidence regarding the alleged overtime work, but "she did not contemporaneously record overtime work in her time and attendance record for immediate compensation." Def.'s MSJ at 22 (relying on Pl.'s Resp. to First Set of Interrogs., ECF No. 58-4). Plaintiff attempts to use total email traffic to illustrate her overtime work, *see* Pl.'s Resp. at 10 ("Plaintiff emails decreased by 47% when comparing CY2019 to CY2022 which indicates that Plaintiff's overtime activity far exceeded 10 hours per week."), but the Court is unpersuaded by this unsupported conclusion. Given the lack of evidence showing that the "*real* factor" behind the overtime compensation differentials was "*not* the identified 'factor other than sex,'" the Court finds that plaintiff insufficiently rebutted defendant's affirmative defense and finds for defendant. *See Behm v. United States*, 68 Fed. Cl. 395, 400 (2005) (emphasis in original).

---

[4] The Court notes, however, that it does not express any view on the relative importance or value of plaintiff's work.

**IV.     Conclusion**

       For the reasons set forth above, defendant's Motion for Summary Judgment pursuant to RCFC 56 is hereby **GRANTED**.  The Clerk of Court is directed to enter judgment accordingly.

       **IT IS SO ORDERED.**

                                      s/ *Loren A. Smith*
                                      Loren A. Smith,
                                      Senior Judge